Case No. 15-1122, National Treasury Employees Union Petitioner v. Federal Labor Relations Authority. Ms. Giles, for the petitioner. Ms. Faust, the respondent. Good morning. I'd like to reserve two minutes for rebuttal. This case is about whether our rating guides used in merit promotions. Although the FLRA has ruled previously, multiple times, that there is no bar to releasing such crediting plans, it departed from that precedent here and ruled for the first time that we're aware of that a particular regulation, a FOIA regulation, is an absolute bar to releasing such documents. Is it really departing from its precedent here? The other cases in which they've said there was no bar were somewhat distinguishable from this one. They weren't talking about negotiability in those cases, correct? That's true. In the previous cases, it usually came up in the unfair labor practice context, and this regulation did not come up, because I think it's never come up. We haven't found a case in which this regulation has been used or applied to bar access to these documents. So we actually have no case in which the FLRA has discussed this particular regulation? That's true. There's an older case called Airborne in which the OPM raised an amicus brief 5 CFR 300, and the FLRA didn't pick up on that or address it. I don't think 300.201C has been addressed in any FLRA decision. The authority's main argument here is that we did not sufficiently address the applicability of this regulation, 5 CFR 300.201C, in our briefs and therefore waived our arguments. But the agency below said that our proposal was contrary to law, and the agency cited FOIA and FOIA case law and, in a single sentence, this particular regulation, and we responded to those arguments. And we furthermore said that no law creates an absolute bar against the release of credit. Ms. Jones, why did you seek re-hearing before the authority? Well, that's not a prerequisite to coming to this court, and we did think the extraordinary circumstances requirement would be a hard hurdle to overcome. So we did not petition for reconsideration. Then on 300.201, however, other than that sentence about no law, there's no further discussion of that that was put forth to the authority? I do want to be frank with the court. We did not cite 300.201C. We cited FOIA, FOIA case law, and the statement that no law creates a bar to release credit. And I guess the question then for us is how, at what level of generality, do we interpret the no objection, not previously urged before the agency, shall be considered? Because obviously you didn't discuss the regulation in specific, and some of the arguments that you're putting forth now were not put forth before the agency. So how would you urge us to explain the distinction between objection generally raised and one more specifically raised for purposes of this statute? Well, two responses. One, our statement that no law creates an absolute bar against the release of these documents was not our only argument. We did make multiple FOIA arguments. But on this, that would be the only real response, I think. Well, it is a FOIA regulation. I think the FLRA doesn't dispute that, and we did discuss FOIA. And I do want to bring to the court's attention a ruling, which is not in our briefs because I only found it preparing for oral argument, but in a 1985 case, this court in Treasury versus FLRA, it's at 762 F. 2nd. 1119. The agency there did not quote or cite the regulation that was in dispute, and the court nevertheless found that there had not been a waiver. So I don't think that's an automatic bar to our waiver arguments. But we would submit you have to take all our arguments in total, the FOIA arguments and the fact that we made that statement about no law creating an absolute bar to the release of these documents. The context here is there were five proposals in dispute before the FLRA, and multiple agency arguments on the non-negotiability of each one. Understandably, here we are focused just on the one proposal in dispute and the one argument that the FLRA addressed. Of course, we are expanding and hopefully adding more detail to our argument below, as every appellant does and every appellant has a right to do. Getting past waiver, the agency doesn't dispute this as a FOIA regulation, and FOIA permits agencies to withhold documents, but it doesn't mandate it. Using a FOIA regulation as a categorical bar would undercut the strong public policy in favor of collective bargaining. Ms. Giles, it's not entirely clear to me what the union's proposal seeks. It seems to me that there's a stronger case that the union is entitled to this information, for example, for the purpose of having an expert, a waiver economist or whatever appropriate expert, ensure that they're valid, that they're not biased, and that would be part of the union's representation of its employees' interests. However, you also in your briefing appear to be saying, hey, this needs to be available for members to know what these criteria are. Universities do it. They should be doing it, too. That strikes me as actually on quite a different footing, that they want to have criteria by which they can get a more spontaneous answer, a less strategically designed answer from a candidate. That's management prerogative, is it not? So it's just not entirely clear to me which of those is the proposal, or both, or is it? You're right. This typically comes up in a more specific context, in a ULP or something where we narrowly need it. We are asking for access to these documents, although stepping back, we're actually just asking for the opportunity to talk with the agency about it. We can't even come to the negotiations table. But were we to get access to the documents and were the agency to find that it didn't need the safeguards that are built into the proposal, then we would evaluate the crediting plans on a broader scale to see if they are compliant with the rest of 5 CFR 300. Let me try to follow that. You said the agency didn't need the safeguards built into the proposal. What are you referring to? No, I'm saying we would only get them if the agency decided. There are safeguards built into our proposal. They can orally discuss it with us instead of handing it over. So we wouldn't even get them if the agency felt the safeguards needed to be invoked. If they felt that was not a concern and handed them over to us, then it is true. We would look at them in a slightly broader viewpoint. Can I ask another question on the waiver point? There is a regulation 24.25C1 that says the union's response must include the arguments and authorities supporting the opposition to any agency argument, including specific citation, any law, rule, or regulation on which you rely. So how should we deal with that regulation? That is the FLRA's regulation and I believe it dovetails with the statute and the objection. It is the same analysis. Did we sufficiently address it below? Well, to my point about how should we think about the generality of the term objection, and you rightly say, well, we should be able to further develop our arguments here. I agree with that. But if the term objection means you have to put forth the arguments and authorities, which their regulation says you do, that didn't really happen here, at least with respect to 300. Well, we do think our FOIA cases are the authorities and we think our FOIA arguments are the arguments that we want to play. So it really blends. In the end, it is not just that one sentence, no law, but it is the surrounding FOIA arguments you make you think are the response ultimately. Yes, that is our position. And I am not sure whether you have any insight on which you rely language, whether you are relying on that. You would be relying on that regulation or the authority would be relying on that information. I don't know whether that makes any difference as to the applicability of 2424.25C1. I am not sure. I think we are saying that our FOIA arguments and the authorities that we cited are the ones that we rely in support of our claim that we should have access to these discussions over these crediting plans. I think my time is up if I am going to reserve time. Thank you. Good morning, Your Honors. May it please the Court, my name is Stephanie Faus on behalf of Respondent, the Federal Labor Relations Authority. With me at council table are the agency's solicitor, Fred Jacob, and the deputy solicitor, Zachary Hennigy. The Court should dismiss the petition for review because the union failed to raise its five CFR section 300.201C arguments to the authority in the first instance. The Court may not consider any objection that was not urged before the authority unless extraordinary circumstances excuse the failure to do so. Here, the union made no mention of section 300.201C to the authority, nor did it raise any of the arguments that span nine pages of its opening brief to the Court. The union now claims that in raising its FOIA arguments, it preserved its 201C arguments. However, the union's FOIA arguments were insufficient to put the authority on notice that the union would pursue 201C arguments on appeal for three reasons. First, in raising the FOIA, the union at best raised 201C implicitly. But under the Court's precedent in National Weather Service, raising an argument to the authority implicitly is insufficient to preserve it on appeal. Second, 201C is not obviously on its face a FOIA regulation as opposed to a general regulation intended to protect the integrity of federal test material, including crediting plans. The authority only would have known 201C was a FOIA regulation had the union made that argument to the authority or had the authority looked beyond the plain text of the regulation to the 1985 Federal Register Notice. And that leads into the third reason. As Judge Kavanaugh acknowledged, the authority's negotiability regulations provide that a union must make specific citation to the law, rule, or regulations on which it relies in opposing an agency's statement of position. And again, the union made no citation to 201C here. I guess the counter to that would be you all are 300.201C is raised and the union responds with a general comment that no law actually bars this and then explains the FOIA regulations, which is the substance of its argument. So it's not that they are raising something that was never contemplated before. It's that something was raised. They responded with a general answer, I guess, and then explained some of the details of why they more broadly don't think that's proper. So that seems a different circumstance to me than the usual no objection, not previously urged. Mel? Well, Your Honor, the court has under Section 7123C required parties to raise their arguments to the authority with specificity. But as you said, the point is were you on notice. And I'm not sure what you're saying about not being on notice because the basic gist of the union's argument is that the agency has miscast the effect of FOIA and the FOIA regulation on the negotiability of this and the possibility of disclosure. It doesn't bar you from disclosing. It permits your client to make a judgment about that. And therefore, if in the context of bargaining you thought the judgment was we can afford a limited way to give over these instruments, that it doesn't prevent that. It authorizes you. It gives you some leeway. And so they're making that argument. Clearly you knew that argument was in the case. And how does this one little regulation that's kind of, you know, further elaborating and make a difference in terms of your ability to prepare? Well, Your Honor, again, the union's 201C arguments in its opening brief to the court were not raised to the authority. But the gist of them is very much there. 201C is not the basis of their argument. It's the basis of your argument, right? And they're responding to it. Your Honor is correct. 201C is the basis of the agency's argument. And the authority found that the union had conceded that argument when it did not respond to it. In raising the union's 4- That makes no sense, obviously, in the context of the overall back and forth here that they conceded it. I mean, I guess you could waive. But they didn't waive. They made a bunch of arguments about why no law, to their words, created an absolute bar against releasing crediting plans. Well, Your Honor, the authority found that the union did not specifically counter the agency's assertion that 201C expressly prohibits the release of crediting plans. It only, as Your Honor said, made that generalized objection that no law creates an absolute bar. And if that kind of statement were sufficient to preserve an issue, then there would be no need, in fact, for a response in a negotiability proceeding before the authority. It's not always- Wait, so can you- I'm sorry. Can you just explain that? What do you mean? Yes, Your Honor. If an agency could argue to the authority that a proposal was barred by law and a union in response could say that no law creates an absolute bar against the release of crediting plans in this instance, there would be no purpose for a response. But there's much more here. They've said FOIA and by implication a FOIA regulation doesn't bar because it gives you a more nuanced choice whether to disclose in light of what agency hiring interests might be impaired by disclosure. And that is true both of FOIA in general and of this regulation. So the notion that you've somehow been sandbagged just doesn't- I just don't even follow how that could be. And it also seems like this is an argument that's been made in the context of, you know, six different arguments at the authority level with each of them with, you know, many, many subparts. And so we would be applying a very demanding standard of preservation in that context with a forest of arguments to say that every single one, every branch has to be articulated in order for it to be preserved. Well, first, Your Honor, I would note that the union did not make the argument to the authority that not only the FOIA but also FOIA regulations would not bar the release of crediting plans. How could a FOIA regulation bar something that FOIA doesn't bar? Well, Your Honor, because the authority didn't reach that issue in this instance because it did find concession, I can't speak to the substance of that. No, but just as a general matter, it would be unauthorized as a regulation if it barred something that FOIA didn't actually bar, wouldn't it? Again, Your Honor, the authority didn't reach that. But here the union did not even argue to the authority that not only FOIA but the regulations such as 201C, which the agency clearly cited, did not bar the release of crediting plans. I guess this blends in your merits argument because you could say that the reason they didn't explain more specifically about 201.C is because they don't have a good answer to it. Is Your Honor referring to the authority or to the union? The authority. Well, Your Honor, it's... I mean, the union doesn't have a good answer, I should say, to 201C. Is your merits position? Our merits position is that the union did not raise any response to the 201C argument, and so the authority acted reasonably and in accordance with its negotiability regulations in treating the union as conceding that point. And in light of that concession, the authority reasonably found that there was a conflict between the proposal and 201C. 201C's plain language provides that all civilian federal employees have a duty to protect the confidentiality of test material broadly, not merely OPM-created or controlled test material, and to assure the release of that material, including crediting plans, only in conjunction with a competitive service examination. That's what I mean by your merits argument. Your merits argument is the plain terms of this regulation are inconsistent with the union's position. Yes, the authority found that there was an apparent conflict between the proposal and the plain language of 201C. And absent any argument, again, on the merits, the tax controls, that's your position? That's correct, Your Honor. The authority applied its negotiability regulations to find concession in that instance. If the union had proffered a proposal that was, I would have to characterize, clearer than the one that they'd proffered, that said our concern, we recognize management prerogative to have not only test questions and answers, but criteria for hiring to a point remain confidential. But we have a concern on behalf of our members with validity and the lack of arbitrariness and bias in employment criteria. So what we're proposing to negotiate over is that the union receive in confidence something like these crediting plans for the sole purpose of having an expert independently evaluate it on behalf of our members, that we would keep it in confidence and not release it to members who are incumbent who might not qualify for these promotions. Is that something that you think would be negotiable? Well, Your Honor, because the authority has not ruled on that, I can't speculate on how it would. However, I can tell Your Honor that in a more recent case that was not cited in the briefs, the 2009 Fort Dix case, the authority found in the particularized need context that an agency was not required to release crediting plans, relying on the precedent of this court in National Treasury Employees Union v. U.S. Customs Service and the Seventh Circuit in the Kaganove case that crediting plans need not be released under FOIA Exemption 2. Allowing the union to seek initial review of its claims before this court would conflict with congressional intent. Oh, I'm sorry, Your Honor, I just saw that my time has expired. Thank you, Your Honors. Thank you. I think there was some time left. You have a minute remaining. Okay. You have a minute remaining. We'll give you two. Just briefly, there are, of course, a number of waiver cases out there by this court, and we would submit that the ones where this court has held magic words are not required to preserve an argument is the one that's on point for the 2014 ruling where you said it is permissible for a party to present a narrower argument than it made below without the waiver concern. The agency cites, in essence, the text of the regulation. Your response is no, the text, the regulation doesn't control, reading your response, I think, generously. But why, just going to the merits, why doesn't the text control? Your response on the merits seems to be, well, it's a FOIA regulation, so read the text of the regulation in light of its purpose. Is that your argument? An additional argument is that the text of the regulation seems to apply only to OPM documents, and these are Food, Nutrition, and Consumer Service documents. And if you look at 300.201 generally, the first part talks about releasing information to the public, so we think it's clear just from the text without going back to the implementing statute that it means to apply to releasing documents to the public. But it says each employee entrusted with test material has a positive duty to protect the confidentiality of that material and to assure release only as required to conduct an examination authorized by the office. That's beyond FOIA. I believe that last part talks about examinations conducted by OPM. That's what that regulation would be limited to. Okay, so that's your argument, that in context it doesn't reply. But this is where the authorities are a little bit hamstrung because they specifically say, well, we didn't get any in the decision, we didn't get any arguments to that effect. And that's where the waiver point does seem to give them some force. Well, we didn't give them FOIA arguments, but you're certainly correct. We didn't specifically say the implementing statute for this regulation is FOIA. We did not raise that. And on this employee question, does it apply to all employees or apply to OPM, that's not put forward to the authority below either, correct? It was not, correct. Okay, and that's why we don't have them. And you're raising it now. That's why we don't have a good explanation from them on this. Okay. Thank you. Thank you, counsel. The case will be submitted.
judges: Brown, Kavanaugh, Pillard